IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JIMMY R. MITCHELL AND<br>CONNIE MITCHELL, his wife | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Civil Action No. 15-958-SLR-SRF |
| ATWOOD & MORILL CO., et al., | )<br>)<br>) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently, there are two motions for summary judgment before the court in this asbestos-related personal injury action.[1] The motions were filed by Defendants Nash Engineering Co. ("Nash") (D.I. 70), and Foster Wheeler LLC ("Foster Wheeler") (D.I. 72) (collectively "Defendants"). For the reasons set forth below, I recommend that the court grant Defendants' motions for summary judgment.

### II. BACKGROUND

#### A. Procedural History

Jimmy and Connie Mitchell ("Plaintiffs") filed this asbestos action in the Delaware Superior Court against multiple defendants on July 30, 2015, asserting personal injury claims proximately caused by Mr. Mitchell's alleged exposure to asbestos. (D.I. 1, Ex. A) Foster Wheeler removed the action to this court on October 22, 2015. (D.I. 1) Nash and Foster Wheeler

---

[1] Summary judgment motions filed by defendants, Warren Pumps LLC, Atwood & Morrill Co., and Carrier Corporation, have since been terminated or granted. (D.I. 85, 91)

filed motions for summary judgment on June 10, 2016. (D.I. 70, 72) Plaintiffs oppose the motions. (D.I. 79, 80) The court held oral argument to address the motions on September 12, 2016.

### B. Facts

#### 1. Plaintiffs' alleged exposure history

Plaintiffs allege that Mr. Mitchell developed lung cancer as a result of exposure to asbestos-containing products, in part during the course of his employment as a boiler fireman with the U.S. Navy from 1976 to 1979.[2] (D.I. 1, Ex. A at ¶ 3) Plaintiffs contend that Mr. Mitchell was injured due to exposure to asbestos-containing products that Defendants manufactured, sold, distributed, or installed. (*Id.*, Ex. A at ¶ 11) Accordingly, Plaintiffs assert negligence, punitive damages, strict liability, and loss of consortium claims. (*Id.*, Ex. A)

Mr. Mitchell was deposed on December 8, 2015. (D.I. 70 at 2) Plaintiffs did not produce any other fact witness for deposition. (D.I. 56 at ¶ 4(c)(iv)) Mr. Mitchell testified that he left high school just before graduation in 1976 and joined the Navy. (D.I. 79, Ex. A at 77:23–78:3) After training, in 1977, he was assigned to the USS Gridley in San Diego as a board technician. (*Id.*, Ex. A at 83:10–84:9) He remained there throughout his enlistment until 1979. (*Id.*, Ex. A at 84:6–24) While aboard the USS Gridley, Mr. Mitchell's duties included "cleaning the bilge, painting, replacing steam lines, replacing asbestos on the side of the boilers, [and] making sure that [] the boiler was in shape to continue the job." (*Id.*, Ex. A at 107:11–17)

---

[2] Plaintiffs allege that exposure also occurred while working for other employers, and while completing personal maintenance projects. (D.I. 1, Ex. A at ¶¶ 3, 6) However, Mr. Mitchell alleges that exposure to the moving Defendants' products only occurred while he was employed by the Navy.

2

### 2. Plaintiffs' product identification evidence

#### a. Nash

Nash is a pump manufacturer. (D.I. 80, Ex. F at 9) Nash supplied pumps that may have contained asbestos-containing gaskets from 1959 to 1981. (*Id.*, Ex. F at 10) Mr. Mitchell testified to working with pumps and gaskets aboard the USS Gridley. (*Id.*, Ex. A at 201:14–210:11) Specifically, he worked with bilge pumps, centrifugal pumps, auxiliary pumps, and most pumps in Fire Room Number Two. (*Id.*, Ex. A at 199:1–201:23) Mr. Mitchell stated that he replaced gaskets, insulation, and packing on the pumps. (*Id.*, Ex. A at 208:4–213:19) However, Mr. Mitchell did not specifically identify working with Nash pumps or gaskets. (*Id.*, Ex. A at 210:14–17; D.I. 70 at 2)

#### b. Foster Wheeler

Mr. Mitchell testified that the USS Gridley had four Foster Wheeler boilers. (D.I. 73, Ex. A at 107:18–25) He stated that he worked on two of the Foster Wheeler boilers in Boiler Room Number Two. (*Id.*, Ex. A at 108:1–19) Mr. Mitchell's boiler work included cleaning and painting inside the outer casing, replacing external insulation, cleaning the burner housing and firebox, cleaning the steam and sludge drums, and replacing the gasket on the boiler door. (*Id.*, Ex. A at 108:20–109:23; 126:3–20) Given the high heat applications, Mr. Mitchell believed that his asbestos exposure occurred as a result of working with external insulation on the boilers, firebrick and mortar inside fireboxes, and the asbestos padding covering of the sludge-box door. (*Id.*, Ex. A at 113:11–124:23) Plaintiff also asserts that he replaced asbestos-containing gaskets on the boiler doors. (*Id.*, Ex. A at 126:3–20)

Mr. Mitchell testified that he replaced the exterior asbestos-containing insulation two to three times per week. (*Id.*, Ex. A at 115:14–116:21) He cleaned the burner houses "numerous

3

times." (*Id.*, Ex. A at 117:10–118:7) To clean the burner housing, Mr. Mitchell used a wire brush to scrub the steel pipes and walls, and swept the floor. (*Id.*) Scraping the brick in the confined space inside the boilers created dust inhaled by Mr. Mitchell. (*Id.*, Ex. A at 120:16–121:2) Mr. Mitchell replaced the asbestos padding on the sludge drums every time the ship came to port. (*Id.*, Ex. A at 125:8–23) Additionally, he replaced the gaskets on the boiler doors about twenty times. (Id., Ex. A at 126:3–20) He thought that the mortar inside the firebox and internal insulation were original to the Foster Wheeler boilers, but he did not know about the external insulation. (*Id.*, Ex. A at 128:21–129:11)

### III.   LEGAL STANDARDS

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its

contention by citing to particular documents in the record, by showing that the cited materials do not establish the absence or presence of a genuine dispute, or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### B. Maritime Law

The parties agree that maritime law applies. (D.I. 56 at ¶ 10) To establish causation in an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[3] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[4] *Abbay v. Armstrong*

---

[3] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, E.D. PA Civil Action No. 2:09-69578, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[4] The majority of federal courts have held that, under maritime law, a manufacturer has no

5

*Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

"In establishing causation, a plaintiff may rely upon direct evidence…or circumstantial evidence [to] support an inference that there was exposure to the defendant's product for some length of time."[5] *Id.* (citing *Stark*, 21 F. Appx. at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492).

### C. Government Contractor Defense

Under the test set out in *Boyle v. United Techs. Corp.*, a federal contractor will not be held liable for its product's design defects when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. 487 U.S. 500, 512 (1988). The defense is applicable to both design defect and failure to warn claims. *See, e.g., MacQueen v. Union Carbide Corp.,*

---

liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, Civil Action No. 10-0113-SLR-SRF, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[5] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991) (emphasis in original)).

6

Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *3 (D. Del. Dec. 13, 2013), *report and recommendation adopted,* 2014 WL 108535 (D. Del. Jan. 9, 2014); *Walkup v. Air & Liquid Sys. Corp.,* Civil Action No. 12-1635-SLR-SRF, 2013 WL 5448623, at *2 (D. Del. Sept. 26, 2013), *report and recommendation adopted,* 2013 WL 5798701 (D. Del. Oct. 24, 2013); *In re Asbestos Litig. (Seitz),* 661 F. Supp. 2d 451, 454 (D. Del. 2009). In a failure to warn claim, the first prong of *Boyle* is altered to preclude liability where the government exercised discretion and approved the warnings. *See Tate v. Boeing Helicopters,* 55 F.3d 1150, 1157 (6th Cir. 1995). Courts require the government approval to "transcend rubber stamping" for the defense to shield a government contractor from liability for failure to warn. *Id.* at 1156–57.

## IV. DISCUSSION

### A. Nash

Nash's motion for summary judgment should be granted. Nash argues that because Mr. Mitchell did not identify exposure to any Nash product, Nash is entitled to judgment as a matter of law. (D.I. 70 at 2) Nash contends that Plaintiffs may not establish causation by showing that Nash products were merely present somewhere at Mr. Mitchell's workplace. (*Id.* at 4–6) Plaintiffs respond that a genuine issue of material fact remains because Mr. Mitchell testified that he worked on all the pumps in Fire Room Number Two, and Navy purchase orders show Nash's asbestos gaskets were used on centrifugal pumps on the USS Gridley. (D.I. 80 at 1–3)

Under maritime law, Plaintiffs must produce evidence of exposure to an asbestos-containing Nash product, and evidence that such exposure was a substantial factor in causing Mr. Mitchell's alleged injuries. *Lindstrom v. A-C Product Liab. Trust,* 424 F.3d 488, 492 (6th Cir. 2005). Evidence that Nash's products were present at Mr. Mitchell's workplace, without more, is insufficient to overcome a motion for summary judgment. *Id.*

In the present action, Mr. Mitchell testified that he worked on all the pumps in Fire Room Number Two, but he did not testify that those were Nash pumps. (D.I. 80, Ex. A at 201:14–23) Plaintiffs submit purchase orders in support of the argument that asbestos-containing Nash pumps were present on the USS Gridley.[6] (*Id.*, Ex. B) However, the purchase orders are from 1968 and 1971. (*Id.*) Mr. Mitchell did not work on the USS Gridley until 1977. (D.I. 79, Ex. A at 83:10–84:9) Moreover, the purchase orders do not identify the location of the listed equipment aboard the ship. (D.I. 80, Ex. B)

That Nash "supplied pumps that may have contained asbestos-containing gaskets from approximately 1959 until 1981" does not show that Mr. Mitchell was exposed to one of those products. (*Id.*, Ex. E) "While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup*, 2014 WL 2514353, at *6 (citing *Leonard v. Stemtech Health Scis., Inc.*, Civ. Action No. 08-067-LPS-CJB, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011), *report and recommendation adopted*, 2012 WL 1133185 (D. Del. Mar. 28, 2012)). Evidence of "substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury." *Id.* at *3 (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 376 (6th Cir. 2001)). Plaintiffs have not submitted evidence indicating that exposure to a Nash pump was a substantial

---

[6] The records Plaintiffs rely on are submitted without a declaration, and they were previously undisclosed in the pending litigation. (D.I. 80, Ex. B) As in the *Walkup* case, Nash asserts that these records are not admissible at trial. *See Walkup v. Air & Liquid Sys.* Corp., Civil Action No., 12-1635-SLR-SRF, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014); (D.I. 86 at 2–3) In *Walkup*, without deciding admissibility, this court determined that such evidence was insufficient to create a genuine issue of material fact on the issue of product identification. *Id.*

8

factor in causing Mr. Mitchell's alleged injuries. *Id.* at \*5 (granting summary judgment in Nash's favor based on a similar record). Therefore, the court should grant Nash's motion for summary judgment.

### B. Foster Wheeler

Foster Wheeler's motion for summary judgment should be granted. Foster Wheeler argues that summary judgment is warranted based on lack of causation and the government contractor defense.

#### 1. Causation

Foster Wheeler argues that summary judgment is warranted because there is no evidence Mr. Mitchell was exposed to an asbestos-containing Foster Wheeler product. (D.I. 73 at 4) "While Mr. Mitchell alleges exposure while working with Foster Wheeler boilers, his exposure is attributed to the components or products attached to the boiler itself," and Foster Wheeler did not manufacture or supply those products. (*Id.*) Foster Wheeler argues that it cannot be not liable for the products of others. (*Id.* at 9) Plaintiffs respond that genuine issues of material fact remain because Mr. Mitchell testified he was exposed to asbestos dust in a confined area while cleaning inside Foster Wheeler boilers. (D.I. 79 at 3) Additionally, Plaintiffs contend that Foster Wheeler owed a duty to warn about the foreseeable use of asbestos with its boilers because Foster Wheeler recommends in a technical manual that asbestos gaskets be used on the access doors and panels of its boilers. (*Id.* at 4)

To establish causation under maritime law, Plaintiffs must show that Mr. Mitchell was exposed to a Foster Wheeler boiler, the exposure was a substantial factor in causing Mr. Mitchell's injury, and Foster Wheeler manufactured or distributed the asbestos-containing product to which Mr. Mitchell alleges exposure. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d

488, 492 (6th Cir. 2005); *Abbay v. Armstrong Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

Mr. Mitchell testified that he performed maintenance to two Foster Wheeler boilers in Fire Room Number Two. (D.I. 73, Ex. A at 108:1–9) He recalled that the boilers were approximately six to eight feet long from front to back, 100 feet from side to side, and two or two and a half stories tall. (*Id.*, Ex. A at 110:6–18)

Mr. Mitchell did not know if the external insulation he maintained was original to the Foster Wheeler boilers, but he testified that the boilers would have been repaired and maintained prior to his arrival onboard the USS Gridley. (*Id.*, Ex. A at 128:14–20) The door gaskets he maintained were not original either, as they were replaced every time the boiler door was opened. (*Id.*, Ex. A at 126:3–20)

Aside from the external insulation and gaskets, Mr. Mitchell also painted, cleaned, and repaired insulation inside the boilers "numerous" times. (*Id.*, Ex. A at 108:20–111:12) He testified that the sludge drum on the bottom of the boiler had an opening covered with asbestos padding. (*Id.*, Ex. A at 123:8–124:23) Mr. Mitchell believes he was exposed to asbestos when he replaced the insulation on the sludge drum opening every time the ship was in port. (*Id.*, Ex. A at 125:14–126:2) He thought that the insulation inside the doors was original to the Foster Wheeler boilers. (*Id.*, Ex. A at 128:14–129:11) However, Plaintiffs do not cite to any evidence to support such an assertion. Additionally, that Mr. Mitchell often replaced the insulation padding on the door supports an inference that the component was not original to the USS Gridley.

Mr. Mitchell also thought that cleaning inside the boiler exposed him to asbestos because of the brick and mortar mix inside the burner housing, which was made for high heat

applications. (*Id.*, Ex. A at 118:24–121:11) Scraping the wall of the boiler caused the asbestos-containing mortar mix to "release." (*Id.*) Mr. Mitchell testified that he breathed that dust in a "small confined area of approximately eight foot by eight foot" while maintaining the boiler. (*Id.*) He believed that the boiler makers installed and replaced the mortar mixture themselves. (*Id.*, Ex. A at 122:1–11) However, Plaintiffs do not cite to any evidence to support that the brick and mortar mix was original to Foster Wheeler's boilers.

In the present action, Plaintiffs have not directed the court to evidence sufficient to create a genuine issue of material fact as to whether Foster Wheeler manufactured and distributed asbestos-containing boiler components, from which Mr. Mitchell alleges exposure. Plaintiffs cite to a Foster Wheeler boiler maintenance manual to support the assertion that Foster Wheeler boilers contained asbestos components, and Foster Wheeler recommended that asbestos be used with replacement components. (D.I. 79, Ex BB) However, that manual is a Navy publication, so at best, it supports an inference that the Navy recommended that asbestos be used to replace some Foster Wheeler boiler components. The manual does indicate that Foster Wheeler supplied such components.

Additionally, Plaintiffs submit an Affidavit from a former Foster Wheeler employee, Walter Newitts, who worked for the company in the 1960's and early 1970's, just before Mr. Mitchell was stationed aboard the USS Gridley. (D.I. 79, Ex. E) However, Mr. Newitts' testimony that Foster Wheeler supplied some asbestos-containing insulation for use with its boilers is not evidence that Mr. Mitchell was exposed to such insulation. (*Id.*, Ex. E at ¶ 21) Additionally, Mr. Newitts' testimony does not address Navy specifications for Foster Wheeler products subject to a government contract. Moreover, Mr. Newitts' statements, while making general reference to boilers, refer to exterior insulation on "casing and piping," and to boiler

11

installation at utility plants or power companies, not to marine based installations. (*Id.*, Ex. at ¶¶ 5–10, 18–36) The court would be going beyond viewing the facts in favor of the nonmoving Plaintiffs to speculate that the Newitts Affidavit creates a factual issue concerning Foster Wheeler's manufacture, sale, or use of asbestos in the boilers onboard the USS Gridley, on which Mr. Mitchell performed maintenance.

As the Third Circuit recently noted in a factually similar matter, Plaintiffs proffered evidence does not answer the "crucial question of whether the original, asbestos-containing [components were] present in the [boiler] during the maintenance. Nor does it answer the question of whether, if replacement [components were] present...[they] were manufactured by [Foster Wheeler]." *In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 15-1988, 2016 WL 4750507, at *4 (3d Cir. Sept. 13, 2016).[7] Without evidence regarding how frequently insulation and components were saved during maintenance, Mr. Mitchell's testimony cannot support the inference that original, asbestos-containing components remained on or in the boilers upon which he worked. *See id.*

Plaintiffs have done nothing more than show the presence of Foster Wheeler's boilers upon the USS Gridley. *See In re Asbestos Litig. (Dumas)*, Civil Action No. 13-229-SLR-SRF, 2015 WL 5766460, at *10 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016) (granting summary judgment in defendant's favor based on lack of causation, despite the plaintiff's argument that the use of asbestos with defendant's

---

[7] *In re Asbestos Prods. Liab. Litig. (No. VI)* was decided under Indiana law. No. 15-1988, 2016 WL 4750507, at *3 (3d Cir. Sept. 13, 2016). However, the summary judgment standard for liability in an asbestos matter under Indiana law, where the plaintiff "must provide evidence sufficient to support an inference that that he inhaled [a significant amount of] asbestos dust from the defendant's product," is similar to the "substantial factor" standard under maritime law. *See id.*; *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005).

products was foreseeable). Plaintiffs' evidence is speculative as to whether the products to which Mr. Mitchell alleges exposure actually contained asbestos supplied or manufactured by Foster Wheeler. Moreover, that the boiler components were so frequently maintained runs counter to Plaintiffs' assertion that they were original to the Foster Wheeler boilers.

"While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture. *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). In the absence of evidence that original Foster Wheeler components remained on the Foster Wheeler boilers on which Mr. Mitchell worked, or that replacement components were manufactured by Foster Wheeler, Plaintiffs cannot support the assertion that exposure to Foster Wheeler boilers was a substantial factor in causing Mr. Mitchell's lung cancer. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 2016 WL 4750507, at *4; *Lindstrom*, 424 F.3d at 492. Therefore, I recommend granting Foster Wheeler's motion for summary judgment.[8]

---

[8] *See also Malone v. Air & Liquid Sys*, Civil Action No. 14-406-GMS-SRF, 2016 WL 4522164 (D. Del. Aug. 28, 2016) (Foster Wheeler's summary judgment motion granted based on lack of causation and the bare metal defense); *In re Asbestos Litigation (Dumas)*, Civil Action No. 13-229-SLR-SRF, 2015 WL 5766460 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016) (same); *Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (same).

### 2. Government contractor defense

The court recommends granting summary judgment based upon causation. However, Foster Wheeler asserts an additional basis for judgment as a matter of law pursuant to the government contractor defense.

The government contractor defense shields defendants from liability for acts arising out of the performance of a federal contract. *See Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 797 (5th Cir. 1993). A federal contractor is not liable for failure to warn when:

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings; and
> (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*See Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *5 (D. Del. Mar. 17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014) (quoting *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL 6571808, at *4 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535 (D. Del. Jan. 9, 2014)).

Foster Wheeler points to Military Specifications ("MilSpecs") and Affidavits from Admiral Ben J. Lehman (Ret.) and Foster Wheeler corporate representative, J. Thomas Schroppe, as evidence that the government was involved in the design and manufacture of all products used on Navy warships. (D.I. 73 at 11) Admiral Lehman stated:

> The U.S. Navy would not have allowed its equipment suppliers, such as Foster Wheeler, to affix any warning related to any asbestos hazards on their equipment...Further, the U.S. Navy would not have allowed Foster Wheeler to place any warnings related to asbestos hazards in any written material provided by Foster Wheeler to the U.S. Navy or to a U.S. Navy contractor...including its technical and operational manuals....

(*Id.*, Ex. B at ¶ 14) Mr. Schroppe confirmed that Foster Wheeler complied with the Navy's specifications. (*Id.* at 11, Ex. C)

14

However, Plaintiffs submit the Declaration of Captain Arnold P. Moore, USNR (Ret.), P.E. who states:

> The U.S. Navy did not prohibit manufacturers...from providing warnings and safety precautions concerning their products. In fact...Navy specifications and standards specifically required equipment manufacturers...to provide warnings concerning hazards associated with their products....The Navy relied heavily upon its manufacturers and vendors to identify hazards associated with their products.

(D.I. 79, Ex. P at ¶ 11) Captain Moore also cites to MilSpecs requiring manufacturers to provide operating, maintenance, and "safety precautions" for their equipment. (*Id.*, Ex. P at ¶ 12) Dr. Moore avers that the MilSpecs "indicate[] that the U.S. Navy did not intend to dictate warnings and safety precautions to manufacturers....[The MilSpecs] also clearly demonstrate[] that the Navy did not intend to prohibit such warnings and safety precautions." (*Id.*)

A factual question exists as to whether the Navy exercised discretion and approved the warnings at issue, or whether it required manufactures to create their own warning labels. Consequently, genuine issues of material fact remain with respect to the first two elements of the *Boyle* analysis: (1) whether the government exercised discretion and approved the warnings at issue, and (2) whether the contractor provided warnings that conformed to the approved warnings. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 512–13 (1988); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). Therefore, the court recommends that summary judgment based on the government contractor defense is not warranted. However, for the reasons discussed in the preceding section, Foster Wheeler is, nonetheless, entitled to summary judgment based upon lack of causation under maritime law.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant both Nash's motion for summary judgment (D.I. 70), and Foster Wheeler's motion for summary judgment (D.I. 72).

15

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: September 16, 2016

Sherry R. Fallon
United States Magistrate Judge